UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK RON HAYWOOD<br><br>        Plaintiff,<br><br>     v.<br><br>CITY OF TWISP, a municipal corporation; and CHARLIE LINGO, City of Twisp Chief of Police,<br><br>        Defendants. | NO. CV-06-355-EFS<br><br>**ORDER ENTERING RULINGS FROM HEARING ON JUNE 10, 2008** |

    A hearing occurred in the above-captioned matter on June 10, 2008, in Richland. Rodney M. Reinbold appeared on behalf of Plaintiff Mark Ron Haywood; Jennifer C. Underwood appeared on behalf of Defendants City of Twisp and Charlie Lingo. Before the Court were Defendants' Motion for Summary Judgment (Ct. Rec. 15) and Plaintiff's Cross Motion for Summary Judgment (Ct. Rec. 23). After reviewing the submitted material and relevant authority and hearing oral argument, the Court was fully informed and granted and denied in part Defendants' motion and granted Plaintiff's motion. This Order serves to memorialize and supplement the Court's oral rulings.

ORDER * 1

## I. Background[1]

Plaintiff owned the Train Station Mini Mart in Twisp, Washington. (Ct. Rec. 34 at 1.) To promote business, Plaintiff advertised in the Methow Valley Newspaper ("the Newspaper"). *See id.* at 2. On June 16, 2003, Marilyn Bardin, the Newspaper's Office Manager, contacted Defendant Charlie Lingo, Twisp's Police Chief; Ms. Bardin wanted fo file a theft complaint against Plaintiff because he owed $711.60 in advertising expenses. *Id.*

Defendant Lingo filled out an Incident Report. *Id.* In compiling the Incident Report, Defendant Lingo learned that:

1) Ms. Bardin attempted to contact Plaintiff several times regarding his outstanding balance before filing a complaint with the police;
2) on May 25, 2003, Plaintiff informed Ms. Bardin that "he would be in to pay her right away";
3) sometime later, Plaintiff closed the Train Station Mini Mart and left Twisp; and
4) Plaintiff never paid his debt to the Newspaper.

*Id.* at 2-3. Following up on the Incident Report, Defendant Lingo obtained documentation from the Newspaper regarding its efforts to collect Plaintiff's debt. *Id.* at 3. Defendant Lingo forwarded the Incident Report to the Okanogan County Prosecutor's Office; the prosecutor's office did not immediately respond. *Id.*

On November 29, 2003, Defendant Lingo learned that Plaintiff returned to Twisp. Believing he had probable cause, Defendant Lingo

---

[1]The following facts are undisputed.

ORDER ~ 2

arrested Plaintiff that same day for second-degree theft. *Id.* Plaintiff was released from jail on December 1, 2003, because there was no probable cause to believe that Plaintiff committed second-degree theft. *Id.* at 4. On December 2, 2003, the prosecutor's office declined to prosecute Plaintiff for theft. *Id.*

On November 28, 2006, Plaintiff Mark R. Haywood filed a complaint in Okanogan County Superior Court, case number 06-2-00532-7, alleging, *inter alia,* that Twisp Police Chief Charlie Lingo wrongly arrested and falsely imprisoned Plaintiff for failing to pay an advertising debt. (Ct. Rec. 1 at 9.) Defendants removed the case to the Eastern District of Washington on December 14, 2006. *Id.* In December 2007, the parties filed the cross-motions for summary judgment now before the Court. (Ct. Recs. 15 & 23.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2008). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law],

ORDER * 3

its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

When parties file cross-motions for summary judgment, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Fair Hous. Council of Riverside County v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion. *Id*.

**B. Qualified Immunity Standard**

Qualified immunity shields § 1983 defendants from civil liability so long as their conduct does not violate clearly established statutory

ORDER ~ 4

or constitutional rights of which a reasonable person would have known. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc) (citations omitted). This shield encompasses the exercise of poor judgment and only fails to protect those who are "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity's purpose is to protect officials from undue interference with their duties and from potentially disabling liability threats. *Elder v. Holloway*, 510 U.S. 510, 514 (1994).

The Supreme Court has laid out a two-step inquiry for determining whether a public official enjoys qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a trial court examines the facts alleged in the light most favorable to the plaintiff and determines whether the officer's alleged conduct violated a constitutional right. *Id*. Second, the court must decide whether that right was clearly established at the time of the alleged violation. *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202.

If an official's alleged conduct violated a clearly established constitutional right of which a reasonable officer would have known, he is not entitled to qualified immunity. *Id*. Even where material facts are in dispute as to the official's conduct, whether a reasonable officer believed probable cause (or reasonable suspicion) existed to justify a search or an arrest is a question of law for the court that should be determined at the earliest possible point in litigation. *Act Up!Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

ORDER ~ 5

**C. False Imprisonment**

Defendants argue that Plaintiff's false imprisonment claim is time-barred by Washington's two-year statute of limitations. (Ct. Rec. 19 at 2.) Plaintiff did not brief this issue.

RCW 4.16.100 sets forth a two-year statute of limitations for false imprisonment claims. RCW 4.16.100(1) (2008). False imprisonment actions begin to accrue on the date a plaintiff is arrested and knew the factual basis for his claims. *Gausvik v. Perez*, 392 F.3d 1006, 1009 (9th Cir. 2004); *see also Allen v. State*, 118 Wn.2d 753, 757 (1992) (holding that a cause of action under present Washington law accrues from the date a claimant knew or should have known the factual basis for the elements of the claim).

Here, Plaintiff's imprisonment claim is time-barred. Plaintiff was released from custody on December 1, 2003; he did not file a Claim for Damages until August 2006, eight months past the two-year statute of limitations. (Ct. Rec. 21-9, Ex. 8.) Summary judgment on this issue in Defendants' favor is appropriate.[2]

**D. Section 1983 Claim Against City of Twisp**

Defendants assert that Plaintiff's § 1983 claim must fail because he does not allege and cannot prove any independent liability by the City of Twisp. (Ct. Rec. 19 at 2.) Plaintiff does not address this argument.

Section 1983 provides that:

> every person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

---

[2]Moreover, Plaintiff conceded this issue at oral argument.

ORDER * 6

>     injured in an action at law . . . or other proper proceeding
>     for redress.

42 U.S.C. § 1983. "Congress intended the term 'person' to include municipalities," such as the City of Twisp here. *Christie v. Iopa*, 176 F.3d 1231, 1234 (9th Cir. 1999). Nevertheless, municipal liability under section 1983 cannot be found on a theory of respondeat superior. *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).

Instead, a local governmental entity is liable under § 1983 when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Christie*, 176 F.3d at 1235. Specifically, there are four (4) criteria a plaintiff must demonstrate to establish § 1983 liability for municipalities: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, § 1983 municipal liability does not exist because Plaintiff cannot satisfy criteria two, three, and four. Criteria two is not met because Plaintiff does not identify, either in the Complaint or the summary judgment briefing, what Twisp policy, ordinance, or regulation caused the alleged constitutional violation. With respect to criteria three, Plaintiff does claim that Defendants "[were] motivated by an evil intent or involved in a reckless and callous indifference" to his rights - this at least infers that the City of Twisp acted with deliberate indifference. (Ct. Rec. 1 at 10.) But when asked to expound on this allegation during discovery, Plaintiff stated:

ORDER \* 7

> I believe there was an evil intent involved in the conduct towards me. Officer Lingo had previously unlawfully arrested me. Officer Lingo knew very well that the matter was a civil matter. Officer Lingo was motivated by an evil intent and a reckless and callous indifference to my rights when he ordered his deputy to arrest me.

(Ct. Rec. 21-2, Ex. 1.) Plaintiff's allegations of wrongdoing focus on Defendant Lingo and not the City of Twisp. There is no mention what City of Twisp policy amounted to a "deliberate indifference" of Plaintiff's constitutional rights. And finally, criteria four is not met because because Plaintiff never identified a municipal policy that was the "moving force behind the constitutional violation." *Oviatt*, 954 F.2d at 1474. Simply put, there is neither a legal nor factual basis to support § 1983 liability against the City of Twisp. Summary judgment in Defendant's favor on this issue is appropriate.[3]

**E. Qualified Immunity - Defendant Lingo**

1. Violation of Constitutional Right

Defendant Lingo contends that he is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights. (Ct. Rec. 32 at 3.) Plaintiff responds that Defendant Lingo lacked probable cause to arrest Plaintiff and, therefore, violated his Fourth Amendment rights. (Ct. Rec. 24 at 3.)

Prong one of *Saucier*'s two-part qualified immunity test requires the trial court to examine the facts alleged in the light most favorable to the plaintiff and determine whether the officer's alleged conduct violates a constitutional right. 533 U.S. at 201; *see also Devereaux*,

---

[3]Plaintiff also conceded this issue at oral argument.

ORDER * 8

263 F.3d at 1074 ("In essence, at the first step, the inquiry is whether the facts alleged constitute a violation of the plaintiff's rights.")

"A claim for unlawful arrest is cognizable under section 1983 as a violation of the Fourth Amendment provided that the arrest was made without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). Probable cause is established if "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probably that [the defendant] had committed a crime." *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992).

Defendant Lingo insists that he had probable cause to arrest Plaintiff for second-degree theft. (Ct. Rec. 32 at 3.) A person is guilty of second-degree theft if:

> he or she commits theft of . . . property or services which exceed(s) two hundred fifty dollars in value but does not exceed one thousand five hundred dollars in value . . . .

RCW 9A.56.040(1)(1) (2008). Theft means to, through deception or taking, "wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services . . . ." RCW 9A.56.020(1)(a) (2008).

Generally, an officer need not have probable cause for every element of an offense. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1499 (9th Cir. 1996). But "when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." *Id.*[4] RCW 9A.56.040, second-degree theft, requires specific

---

[4]Black's Law Dictionary defines "specific intent" as "the intent to

ORDER ∗ 9

intent to permanently deprive the rightful owner of his or her property or services. *See State v. Askham*, 120 Wn. App. 872, 884 (2004); *State v. Hargrave*, 2006 Wash. App. LEXIS 1152 at *10 (June 14, 2006). Therefore, probable cause to arrest Plaintiff existed if Defendant Lingo reasonably believed that Plaintiff intended to deprive the Newspaper of services.

Viewing the facts in Plaintiff's favor, Defendant Lingo violated Plaintiff's Fourth Amendment rights. At the time of arrest, Defendant Lingo knew that:

(1) Plaintiff owed $711.60 in advertising expenses to the Methow Valley Newspaper;

(2) Plaintiff informed Ms. Bardin that "he would be in to pay her right away," but never paid the debt;

(3) Plaintiff left the City of Twisp without paying his debt and notifying Ms. Bardin of his whereabouts; and

(4) the Okanogan Prosecutor's Office had neither accepted nor declined to prosecute Plaintiff for theft.

These facts do not show that Plaintiff wrongfully obtained advertising services from the Newspaper without intending to pay. These facts do show that Plaintiff defaulted on a civil debt obligation - this is not a crime. *See State v. Pike*, 118 Wn.2d 585, 595 (1992) (finding that mere breach of a contractual obligation to pay a debt does not create criminal liability absent a specific statute, or contractual fraud); WASH CONST.

---

accomplish the precise criminal act that one is later charged with." BLACK'S LAW DICTIONARY 814 (7th ed. 1999).

ORDER * 10

art. 1, § 17 ("There shall be no imprisonment for debt, except in cases of absconding debtors.")[5]

This case is unique from more common scenarios where an officer must weigh both probable cause and Fourth Amendment considerations on the spur (and in the heat) of the moment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 347 (2001). Here, Defendant Lingo had ample time to review Ms. Bardin's complaint and realize Plaintiff's conduct does not fall within the parameters of second-degree theft. A prudent person would conclude that there was not a fair probability that a crime occurred. *Garza*, 980

---

[5]Plaintiff conceivably qualifies as an absconding debtor under Washington law because he left Twisp without paying his debt. *Burrichter v. Cline,* 3 Wash. 135, 136 (1891) (defining "absconding debtor" as "one who leaves or is about to leave the jurisdiction, or who conceals himself within the jurisdiction for the purposes of avoiding the process of the courts . . . .") The Washington Supreme Court's 1891 definition of "absconding debtor" is grammatically phrased (due to comma placement) to read that any individual who leaves the jurisdiction is an absconding debtor. This is likely an unintended result, especially considering Black's Law Dictionary defines "abscond" as "[t]o depart *secretly* or suddenly, especially to avoid service of process; to conceal oneself." BLACK'S LAW DICTIONARY 6 (7th ed. 1999) (emphasis added). The more logical conclusion is that an absconding debtor is one who leaves the jurisdiction *for the purpose of avoiding* the process of the courts. Here, there is no evidence that Plaintiff's departure was secret or intended to avoid the process of the courts.

ORDER * 11

F.2d at 550. Accordingly, the facts alleged constitute a violation of Plaintiff's Fourth Amendment rights. *Devereaux*, 263 F.3d at 1074.

### 2. Constitutional Right Clearly Established

Defendant Lingo asserts that Plaintiff's arrest was reasonable given the evidence known at the time. (Ct. Rec. 32 at 6.) Plaintiff responds that Defendant Lingo lacked probable cause at the time of the arrest and that his actions were "plainly incompetent." (Ct. Rec. 33 at 3.)

Prong two of *Saucier's* two-part qualified immunity test requires the trial court to decide whether Plaintiff's constitutional right was clearly established at the time of the alleged violation. 533 U.S. at 201. A law is "clearly established" when "the contours of that right [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Devereaux*, 263 F.3d at 1074 ("[A]t the second step, the question is whether the defendant could nonetheless have reasonably but erroneously believed that his or her conduct did not violate the plaintiff's rights.")

*Saucier's* second-prong is an objective standard that does not consider the subjective beliefs of the officer involved. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). Whether an officer had probable cause to arrest is a question of law to be decided at summary judgment. *Act Up!Portland*, 988 F.2d at 873.

Here, Defendant Lingo is not entitled to qualified immunity. Plaintiff's right to be free from unlawful arrest was clearly established long before his arrest on November 29, 2003. *See Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993). This right is so fundamental that it can be established on the basis of common sense. *See Giebel v. Sylvester*, 244

ORDER ~ 12

F.3d 1182, 1189 (9th Cir. 2001) (finding that, even without closely analogous case law, a right can be clearly established on the basis of common sense).

True, qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Peng v. Hu*, 335 F.3d 970, 976 (9th Cir. 2003) (citations omitted). But given the undisputed facts, no officer could reasonably but erroneously believe that arresting Plaintiff for defaulting on a civil debt was proper.

Defendant Lingo insists that Plaintiff's promise to pay the debt and subsequent departure from Twisp fell within the definition of theft and created probable cause to arrest Plaintiff. (Ct. Rec. 32 at 6.) But these facts alone, without evidence of an intent to deprive, does not create probable cause. Plaintiff's behavior resembles the millions of defaulting debtors burdened with debt and facing the consequences, including collections, credit score hits, and even bankruptcy. The contours of Plaintiff's right were sufficiently clear and Defendant Lingo's actions were plainly incompetent; qualified immunity is not appropriate.

**F. Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff's response to Defendant's summary judgment motion also acts as his cross-motion for summary judgment on § 1983 liability. (Ct. Rec. 51 at 2.) In other words, Plaintiff argues summary judgment on liability is appropriate because Defendant Lingo lacked probable cause to arrest him for failing to pay an advertising debt. (Ct. Rec. 24 at 7.) Defendants counter that Defendant Lingo had probable cause to arrest Plaintiff for second-degree theft. (Ct. Rec. 32 at 7.)

ORDER ~ 13

Making out a claim for unlawful arrest involves a burden-shifting analysis:

> Although the plaintiff bears the burden of proof on the issue of unlawful arrest, he can make a prima facie case simply by showing that the arrest was conducted without a valid warrant. At that point, the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. The plaintiff still has the ultimate burden of proof, but the burden of production falls on the defendant. If the defendant is unable or refuses to come forward with any evidence that the arresting officers had probable cause and the plaintiff's own testimony does not establish it, the court should presume the arrest was unlawful.

*Dubner*, 266 F.3d at 965 (internal citations omitted).

Here, Plaintiff's arrest was made without a warrant. Defendant Lingo therefore bears the burden of establishing probable cause. *Id*. Even drawing all justifiable inferences in Defendant Lingo's favor, Defendant Lingo lacked specific probable cause that Plaintiff committed second-degree theft. As stated above, defaulting on a debt does not create criminal liability absent a specific statute, or contractual fraud. *Pike*, 118 Wn.2d at 595. Emphasizing this point, the Washington Supreme Court stated "[w]e are loath to turn the criminal justice system into a mechanism for the collection of private debts." *Id*.

There is no evidence that Plaintiff, through deception or taking, advertised with intent to deprive the Newspaper of services. Simply put, Plaintiff's actions do not bespeak criminal conduct and no reasonable juror could conclude otherwise. Without probable cause, Defendant Lingo improperly arrested and imprisoned Plaintiff for fifty-two (52) hours. Summary judgment in Plaintiff's favor on liability is appropriate.

ORDER ~ 14

The parties did not address damages.  Accordingly, a genuine issue of material fact as to damages remains for trial.

**G. Plaintiff's Motion to Strike Expert Witness**

Plaintiff has a pending Motion to Strike Expert Witness. (Ct. Rec. 12.)  Plaintiff originally moved to strike Dean Hallatt, Defendants' expert witness, because Defendants did not timely disclose the necessary expert report.  But the parties resolved this matter by allowing Defendants to file a belated expert report in exchange for Plaintiff being able to use his own expert.  The Court approved this resolution.  Accordingly, Plaintiff's motion is denied as moot.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment **(Ct. Rec. 15) is GRANTED IN PART** (false imprisonment and municipal liability under § 1983) and **DENIED IN PART** (qualified immunity for Defendant Lingo).

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 23) is GRANTED** as to liability.  A genuine issue of material fact remains as to damages.

3. Plaintiff's Motion to Strike Expert Witness **(Ct. Rec. 12)** is **DENIED AS MOOT.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and distribute copies to counsel.

**DATED** this_16th_ day of June 2008.

S/ Edward F. Shea<br>
EDWARD F. SHEA<br>
United States District Judge

Q:\Civil\2006\355.MSJ.wpd

ORDER * 15